IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNION INDEPENDIENTE DE TRABAJADORES DE LA CERVERCERIA INDIA,

    Plaintiff,

    v.

CERVECERIA INDIA, INC.,

    Defendant.

Civil No. 13-1019 (SEC)

**OPINION AND ORDER**

Before the Court are the defendant's motion for summary judgment (Docket # 14) requesting enforcement of an arbitration award, the plaintiff's opposition thereto (Docket # 24), and the defendant's reply. Docket # 30. After reviewing the filings and the applicable law, the defendant's motion is **GRANTED**.

**Factual and Procedural Background**

This federal-question suit concerns the interpretation of a collective-bargaining agreement's (CBA) arbitration clause. The plaintiff, Unión Independiente de Trabajadores de la Cervecería India (Union), filed this suit in state court seeking to vacate an arbitrator's determination that a condition precedent to arbitrability — the steps of a grievance procedure — had not been fulfilled. The defendant, Cervecería India, Inc. (Cervecería), a Puerto Rico brewery, removed the case to this court under § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a), maintaining that the controversy involves an assertion of rights under an agreement between an employer and a labor organization, and that resolution of the controversy depends on the meaning of the CBA's arbitration clause. Docket # 1.

Because the Court is ruling on a motion for summary judgment, the following material facts, which are largely undisputed, are outlined in the light most favorable to the non-movant,

**Civil No. 13-1019 (SEC)**                                                                                  **Page 2**

the Union. See <u>Pérez-Cordero v. Wal-Mart Puerto Rico, Inc.</u>, 656 F.3d 19, 20 (1st Cir. 2011). At all times relevant hereto, the CBA — subscribed between the Union and Cervecería — prescribed the procedure for challenging a Union member's dismissal. Pertinently, Article 9 of the CBA establishes a three-step grievance procedure, which is a precondition to submitting a dispute for arbitration. The grievance procedure is as follows:

The first stage provides that any grievance must be presented to Cervecería "within five . . . work days after the occurrence of the facts that motivated the complaint or grievance." Docket # 17-1, p. 2. The second stage, for its part, provides in pertinent part:

> [I]n the event that a satisfactory conclusion is not reached in the first stage of these proceedings or a response is not received within forty-eight . . . hours after having discussed the complaint, the Union President . . . may file in writing his formal complaint with a project for submission before the Company's Human Resources Manager, within four . . . days from receipt of the response or expiration of the term to response. Within four . . . work days following receipt of the complaint, the Human Resources Manager will arrange a meeting with the Complaints and Grievances Committee, which should take place within ten . . . work days following citation to discuss the complaint. The Committee will resolve the controversy within five . . . days following said meeting. . . .

<u>Id.</u>, p. 3. Of particular importance to this case, the third and final stage reads:

> If the Committee does not reach an agreement in the term indicated above or if it did not notify its decision within the same term, the union should file, within a term of ten (10) work days after the expiration for the term to resolve, a request for arbitration at the Bureau of Conciliation and Arbitration of the Labor Department of Puerto Rico [Bureau] . . . .

<u>Id.</u>

Article 9 further regulates arbitration generally. It provides that "[a]ll of the arbitrator's decisions will be in strict accordance with the provisions" of the CBA, "and according to law." <u>Id.</u>, p. 4. It adds, moreover, that "[t]he arbitrator's determinations . . . will be understood as the <u>final</u> <u>solution</u> to the controversy, that is, res judicata, if and when it is according to law." <u>Id.</u> (emphasis added). Finally, "[i]f one of the parties does not comply with the terms stated in . .

**Civil No. 13-1019 (SEC)**                                                                 **Page 3**

. [the Arbitration] Article, it will be understood that the other position will prevail, which will be considered as a <u>final</u> <u>solution</u> to the controversy." <u>Id.</u> (emphasis added).

On July 7, 2008, Cervecería sent a dismissal letter to one of the Union's members, Billy Crespo. Docket # 17-3. The termination, the letter alleged, resulted from Crespo's repeated insubordinations, which, according to Cervecería, violated the CBA's terms and conditions. Crespo's termination became effective that same day.

The next day the Union's president — pursuant to step two of the grievance procedure — wrote back to Cervecería's HR Manager, objecting to the "alleged insubordination[,] which was the basis for the dismissal of the fellow worker . . . ." Docket # 17-4. The Union requested that Cervecería "immediately reinstate" Crespo to his job. <u>Id.</u> "[O]therwise," the Union further wrote, "this matter will have to be submitted for consideration before the Complaints and Grievances Committee." <u>Id.</u>[1] Three days later, Cervecería replied to the Union's July 8 letter. Docket # 20-1. Reiterating its reasons for dismissal, Cervecería — in accordance with step two of the grievance procedure — "summon[ed] the Committee on Complaints and Grievances" for July 22, 2008. <u>Id.</u> The Committee neither reached nor notified a decision regarding the grievance; nor did it notify a minute or any document regarding the same. Docket # 29, p. 6 ¶ 1.

Then, on December 10, 2008 — over four months from the day the Committee was summoned — the Union filed a request for arbitration with the Bureau, as mandated by step three of the grievance procedure. Docket # 14-10. In October 2012 an arbitration hearing was held, during which Cervecería and the Union agreed that the arbitrator would determine whether or not the complaint was "procedurally arbitrable; if it is not, that the complaint be dismissed. If it is determined to be arbitrable, that the hearing on the merits be scheduled." Docket # 14-7,

---

[1] The Union's "submission project" read as follows: "'To determine whether the dismissal of Billy Crespo, which was notified through a letter dated July 7, 2008, was justified or not.'" <u>Id.</u>

**Civil No. 13-1019 (SEC)**                                                                                          **Page 4**

pp. 1-2; see Docket # 17-2, p. 4. The resolution of that question turned on a timeliness defense that Cervecería had asserted regarding the Union's failure to file the arbitration complaint within the time allotted by step three of the grievance procedure.

A month later the arbitrator rendered the award in question. Docket # 14-7. In a nutshell, he agreed with Cervecería's timeliness defense, ruling that he "lack[ed] jurisdiction to resolve the controversy in this case." Id., p. 5. Based on "the clear and unambiguous language of Article 9," the arbitrator explained, "the period of ten . . . working days to file before the Bureau began to run once the Union received the answer; or having expired the period of five . . . working days that . . [the Committee] had to resolve the controversy." Id.  He thus reasoned that "the filing of a request for designation or selection of arbitration on December 10, 2008 before this forum was made outside the period agreed upon by the parties." Id. Ultimately, the arbitrator dismissed the case, holding that it was "not procedurally arbitrable," id., p. 6.

Unhappy with that determination, the Union filed suit in state court seeking to "revoke" the arbitration award, "and consequently, return the case for its adjudication on the merits." Docket # 14-6, p. 12. Although somewhat inartfully pled, the Union grounded its request on Puerto Rico case law, arguing that the arbitrator had erred when he dismissed the complaint for want of jurisdiction. The gravamen of the Union's case was that because the Committee never notified its decision, the ten-day period to file an arbitration request with the Bureau never commenced. And because the award was not rendered "according to law," the Union further posited, the court may (and should) exercise plenary review of the arbitrator's interpretation of the CBA's grievance procedure.

Cervecería promptly removed the case to this court under LMRA § 301 (Docket # 1), and subsequently moved for summary judgment to enforce the award.[2] The Union timely opposed.

---

[2] Section 301 provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any

**Civil No. 13-1019 (SEC)**                                                                                                          Page 5

**Standard of Review**

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, it is axiomatic that courts "may not weigh the evidence," Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994), but must construe the record in the "light most flattering" to the nonmovant. Soto-Padró v. Public Bldgs. Authority, 675 F.3d 1 (1st Cir. 2012). Courts must similarly resolve all reasonable inferences in favor of the party opposing summary judgment. Id.

Once the movant establishes an absence of material facts in dispute, and that judgment is proper as a matter of law, the burden shifts onto the nonmovant to "point to competent evidence and specific facts to stave off summary judgment." Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011). A dispute is genuine if a reasonable factfinder "could resolve the point in favor of the non-moving party," Johnson v. Univ. of P.R., 714 F.3d 48, 52 (1st Cir. 2013) (internal quotation marks omitted), while a material dispute is one that may affect the outcome of the suit under the governing law. Maymí v. P.R. Ports Auth., 515 F.3d 20, 25 (1st Cir. 2008). The nonmovant cannot rest on conclusory allegations and improbable inferences. Shafmaster v. U.S., 707 F.3d 130, 135 (1st Cir. 2013). Neither "effusive rhetoric," Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997) nor "arguments woven from the gossamer strands of speculation and surmise," RTR Technologies, Inc. v. Helming, 707 F.3d 84, 93 (1st Cir. 2013), suffices to forestall the entry of summary judgment. Failure to shoulder this burden "allows the summary judgment engine

---

district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a); see Local 2322, Int'l Bhd. of Elec. Workers v. Verizon New England, Inc., 464 F.3d 93, 96 (1st Cir. 2006) ("Where a collective bargaining agreement includes an arbitration clause, the arbitration award is treated as a contractual obligation that can be enforced through a section 301 suit." (citing Workers v. Lincoln Mills, 353 U.S. 448, 451 (1957))).

**Civil No. 13-1019 (SEC)**                                                                                     **Page 6**

to operate at full throttle." Lawton v. State Mut. Life Assur. Co., 101 F.3d 218, 223 (1st Cir. 1996).

**Applicable Law and Analysis**

*Review of the Arbitration Award*

The Court first outlines the mechanics of judicial review of labor-arbitration awards.[3] And such an overview begins with bedrock: A well-trodden principle dictates that a federal court's review of "arbitral awards is very narrow," PowerShare, Inc. v. Syntel, Inc., 597 F.3d 10, 14 (1st Cir. 2010), and "exceedingly deferential." Ramos-Santiago v. United Parcel Serv., 524 F.3d 120, 123 (1st Cir. 2008) (citations and internal quotation marks omitted). Actually, it is "among the narrowest known in the law." Maine Cent. R.R. Co. v. Bhd. of Maint. of Way Employees, 873 F.2d 425, 428 (1st Cir.1989).

---

[3] It is unclear whether the Federal Arbitration Act (FAA) — which, of course, does not apply of its own force, 9 U.S.C. § 1, but may be nonetheless "consulted for guidance in fashioning federal common law under § 301," Globe Newspaper Co. v. Int'l Ass'n of Machinists, 648 F. Supp. 2d 193, 202 n. 5 (D. Mass. 2009) — or LMRA § 301 governs in cases like this one, which concerns arbitration under a collective-bargaining agreement. While the Court of Appeals appear to be split on the issue, see Int'l Ass'n of Machinists & Aerospace Workers Local Lodge 2121 AFL-CIO v. Goodrich Corp., 410 F.3d 204, 208 n. 2 (5th Cir. 2005) (collecting split), the First Circuit has held that the FAA "applies to collective bargaining agreements." Electronics Corp. of Am. v. Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO Local 272, 492 F.2d 1255, 1258 (1st Cir. 1974) (citing Local 205, United Electrical, Radio, and Machine Workers of America (UE) v. General Electric Co., 233 F.2d 85, 98-101 (1st Cir. 1956)); see also Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 130 (2001) (holding that "only employees engaged in interstate transportation are excluded by § 1 [of the FAA]"). Recently, however, the First Circuit appears to have declined to apply the FAA when, as here, neither party has invoked the FAA's expedited review provisions; the original complaint was filed in state court, presumably under state law; and the case arises under § 301, which the Union does not dispute. See Ramos-Santiago, 524 F.3d at 124 n. 3. So the Court assumes that the common law of labor arbitration controls this instant. Cf. Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001) (per curiam); Local 2322, Int'l Bhd. of Elec. Workers, 464 F.3d at 96. To be sure, such a distinction is of no moment, as the same result would obtain (the Union's request fails) under the FAA (or under Puerto Rico law, which, if contrary to federal law, would be preempted in any event, see generally New England Energy, Inc. v. Keystone Shipping Co., 855 F.2d 1, 4 (1st Cir. 1988) (FAA preemption); Cavallaro v. UMass Mem. Healthcare, Inc., 678 F.3d 1, 6 (1st Cir. 2012) (§ 301 preemption); Chaulk Servs., Inc. v. Massachusetts Comm'n Against Discrimination, 70 F.3d 1361, 1364 (1st Cir. 1995) (Casellas, J.)).

"Where, as here, the employer and the union have bargained for an arbitrator's construction of a CBA, a court's authority to vacate an arbitral award is closely circumscribed." Mercy Hosp., Inc. v. Massachusetts Nurses Ass'n, 429 F.3d 338, 343 (1st Cir. 2005) (citing Boston Med. Ctr. v. SEIU, Local 285, 260 F.3d 16, 21 (1st Cir. 2001); Teamsters Local Union No. 42 v. Supervalu, Inc., 212 F.3d 59, 65 (1st Cir. 2000)). This principle retains considerable bite where, as in this case, the CBA "provides for the final, binding resolution of labor disputes through grievance procedures in which the union fairly represents the aggrieved employee(s)." Ramírez-Lebrón v. Int'l Shipping Agency, Inc., 593 F.3d 124, 131 (1st Cir. 2010). In the labor-management context, a challenge to an arbitration award will generally fail if such an award "draws its essence from the collective bargaining agreement," United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960), which, per the First Circuit, means that "the interpretation be in some way plausible." N. New England Tel. Operations LLC v. Local 2327, Int'l Bhd. of Elec. Workers, AFL-CIO, 735 F.3d 15, 21 (1st Cir. 2013) (citations and internal quotation marks omitted).

That is not to say that the narrowness of such a review "amount[s] to a blank check." N. New England Tel. Operations LLC, 735 F.3d at 22. As the Supreme Court wrote over a half-century ago, "[a]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice." United Steelworkers of Am., 363 U.S. at 597. Still, federal courts should "vacate an arbitral award only in rare circumstances," JCI Communications v. Int'l Bhd. of Elec. Workers, 324 F.3d 42, 48 (1st Cir. 2003), such as cases implicating fraud, lack of jurisdiction, or deceit, see Ramírez-Lebrón, 593 F.3d at 131 — none of which is alleged here.

Applying the above legal precepts to this case, it follows that the Union's request to vacate the award fails. The Court first dispatches the Union's unpersuasive argument that the arbitration award "is fully reviewable by the courts, in order to make sure that the arbitrator's

**Civil No. 13-1019 (SEC)**                                                                                                    **Page 8**

determinations are made 'according to law.'" Docket # 24, p. 4 (bold omitted). It is true — as noted earlier — that the CBA provides that "[a]ll of the arbitrator's decisions will be in strict accordance with the provisions" of the CBA, "and according to law." Docket # 17-1, p. 4; see also id. (providing that "[t]he arbitrator's determinations . . . will be understood as the final solution to the controversy, that is, res judicata, if and when it is according to law").

But, as properly argued by Cervecería, the phrase "according to law" merely means that the arbitrator's decision on the merits — here, whether or not Crespo was fired without just cause, see note 1 above — must conform to federal and state substantive law. See Dorado Beach Hotel Corp. v. Unión de Trabajadores de la Industria Gastronómica de Puerto Rico Local 610 of Hotel Employees & Rest. Employees Int'l Union AFL-CIO, 959 F.2d 2, 4 (1st Cir. 1992). Construing that same phrase, the First Circuit has said as much, finding that the phrase refers to the arbitrator's "obligation . . . to consider rights that spring from the law, vis-a-vis the provisions of the [CBA as] the interpretive rule of the game . . . ." Challenger Caribbean Corp. v. Unión Gen. de Trabajadores de Puerto Rico, 903 F.2d 857, 866 (1st Cir. 1990) (citations and internal quotation marks omitted; first alteration in original). Here, however, the arbitrator never delved into the merits of the grievance; his decision began and ended with his interpretation of a condition precedent to arbitrability: Compliance with the steps of a grievance procedure. The arbitrator simply addressed Cerverceria's timeliness defense — a quintessentially procedural question. See, e.g., Bechtel Constr., Inc. v. Laborers' Int'l Union, 812 F.2d 750, 753 (1st Cir.1987) (finding that failure to submit grievance to committee, as mandated by grievance procedure, is "a classic question of 'procedural arbitrability' for the arbitrator to decide"); Local 285, Serv. Employees Int'l Union, AFL-CIO v. Nonotuck Res. Associates, Inc., 64 F.3d 735, 741 (1st Cir. 1995) (collecting case law on this point). And in doing so, of course, the arbitrator acted "according to law," because he interpreted the CBA's plain language pertaining to the grievance procedure. Cf. Senior v. NSTAR Elec. & Gas Corp.,

449 F.3d 206, 219 (1st Cir. 2006) (finding, in LMRA § 301 case, that an "unambiguous contract," such as a CBA, "must be enforced according to its terms, under both the common law and labor law").

So viewed, the Union's ipse dixit — that the phrase "according to law" somehow upends the standard of judicial review — fails to persuade. In point of fact, that same argument was explicitly (and convincingly) rejected by another judge in this district over three decades ago, see Trailer Marine Transp., Inc. v. Unión De Tronquistas De Puerto Rico, Local 901, 553 F. Supp. 823, 826 (D.P.R. 1982), and the Union falls short of compelling a contrary conclusion in this case. In all events, because the Union's interpretation would contravene the strong national policy favoring "a body of federal law for the enforcement of collective bargaining agreements," see, e.g., Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 130 (2010), it would be preempted by federal law. See Hernández v. International Longshoreman's Association, Local 1575, 25 F.3d 1037, 1994 WL 243784, at *3 n. 4 (1st Cir. 1994) (unpublished table decision) ("An arbitral award may sometimes incorporate state law not inconsistent with established principles of federal labor law." (emphasis added)).

The Union's remaining argument fares no better. The thrust of its contention is that the arbitrator's procedural holding violated the terms of the CBA, because it ignored the language in the contract prescribing a mandatory time frame within which to file a request for arbitration with the Bureau. See Docket # 24, p. 6. As said, the third stage of the grievance procedure provides that "[i]f the Committee does not reach an agreement in . . . [five days] [,] or if it did not notify its decision within . . . [five days], the union should file, within a term of ten . . . work[ing] days after the expiration for the term to resolve [ i.e., five days], a request for arbitration" with the Bureau. Docket # 17-1, p. 2. In the Union's view, when, as here, the Committee neither reaches nor notifies a decision, the Union's term to file an arbitration request with the Bureau simply never begins.

**Civil No. 13-1019 (SEC)** **Page 10**

At bottom, this question is a prototypical one of procedural arbitrability. And as elucidated above, "issues of procedural arbitrability are for the arbitrator to decide." <u>Local 285, Serv. Employees Int'l Union</u>, 64 F.3d at 739 (citing <u>John Wiley & Sons, Inc. v. Livingston</u>, 376 U.S. 543, 557 (1964)). "Once it is determined, . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." <u>Wiley</u>, 376 U.S. at 557; <u>accord</u> <u>Unite Here Local 217 v. Sage Hospitality Res.</u>, 642 F.3d 255, 261 (1st Cir. 2011). Pertinently, such issues include "questions concerning allegations of waiver, defenses to arbitrability, and whether conditions precedent to arbitrability have been fulfilled." <u>Fantastic Sams Franchise Corp. v. FSRO Ass'n Ltd.</u>, 683 F.3d 18, 25 (1st Cir. 2012); <u>see also</u>, <u>e.g.</u>, <u>id.</u> ("[A]rbitrators typically decide questions which concern the scope of their own jurisdiction. . . ."); <u>Wiley</u>, 376 U.S. at 557 (reiterating that arbitrations decide issues such as "whether [grievance] procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate").

In this case, the arbitrator squarely rejected the Union's counterintuitive interpretation of the grievance procedure. He plausibly found that the Union's belated request for arbitration contravened the "clear and unambiguous language of Article 9," siding instead with Cervecería's interpretation that the Union's term to move for arbitration continues to run irrespective of whether the Committee reaches or notifies an answer. Without serious question, then, the award "draws its essence from the collective bargaining agreement," <u>United Steelworkers of Am.</u>, 363 U.S. at 597.

Here the Union merely rehashes its failed arguments. Yet, because the Union contracted to have its disputes settled by arbitration, "it is the arbitrator's view of the facts and the meaning of the contract that . . . [it has] agreed to accept." <u>United Paperworkers Int'l Union v. Misco, Inc.</u>, 484 U.S. 29, 37 (1987); <u>see also</u>, <u>e.g.</u>, <u>Ramos-Santiago</u>, 524 F.3d at 123 ("As this was the

bargain the parties struck, they are bound by the arbitrator's decision." (citing Keebler Co. v. Truck Drivers, Local 170, 247 F.3d 8, 10 (1st Cir. 2001))). Now that it dislikes the end result of its bargain, however, the Union moves this court to impose on the arbitrator the Union's particular view, merely because it disagrees with his ruling. The Court refuses to countenance such second-guessing. See El Dorado Technical Servs., Inc. v. Union General De Trabajadores, 961 F.2d 317, 319 (1st Cir.1992) ("In labor arbitration, matters of contract interpretation are typically for the arbitrator, not for a reviewing court."). This is so, because the Union comes nowhere close to establishing that the award "is based on reasoning so palpably faulty that no judge or group of judges could ever conceivably have made such a ruling, or [unless it] is mistakenly based on a crucial assumption which is decidedly a non-fact." Challenger Caribbean Corp., 903 F.2d at 861 (citations and internal quotation marks omitted). Of course, if the Union disagrees with some of Section 9's procedural requirements — namely, that the CBA imposes no obligation upon the Committee to answer the Union's grievances — it may bargain with Cervecería in order to amend that provision accordingly. But the Union cannot contravene, as it did, the grievance procedure and thereafter cry foul.

      In an effort to blunt the force of this conclusion, the Union says, without much in the way of an argument, that the grievance is "continuous." Docket # 24, pp. 10-11. Because the Committee "refuses to notify in writing [its] resolution or act," the argument goes, the "controversy . . . continues and is renewed each day that Defendant refuses to notify in writing the resolution or act of [the Committee] . . . ." Id. This argument is hopeless.

      The short of it is that such an exception is plainly inapplicable here. The so-called "continuing-violation" exception has been applied to the nature of the underlying occurrence or act (here, Crespos's dismissal) that trigger a union's responsibility to bring grievances. See UMass Mem'l Med. Ctr., Inc. v. United Food And Commercial Workers Union, 527 F.3d 1, 6 (1st Cir. 2008). The Union, however, marshals no authority for the proposition that such an

**Civil No. 13-1019 (SEC)**                                                                                           **Page 12**

exception applies to procedural-grievance violations. And for good reason: The Union's approach would nullify the time limits imposed by the grievance procedure. This ends the matter.[4]

**Conclusion**

Because this case "fails to meet the exceedingly high threshold for judicial interference with arbitral awards," UMass Memorial Medical Center, Inc., 527 F.3d at 7, and because the award "draws its essence from the collective bargaining agreement," United Steelworkers of Am., 363 U.S. at 597, the Union's request to vacate the award is **DENIED**. Consequently, Cervecería's summary-judgment request to enforce the award is **GRANTED**. The award is, therefore, **AFFIRMED**, and this case is **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 3rd day of February, 2014.

*S/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge

---

[4] To be sure, terminating an employee's employment is undisputably a specific occurrence, cf. El Mundo Broadcasting Corp. v. United Steelworkers of Am., 116 F.3d 7, 10 (1st Cir. 1997) (appointment of coworker to new position was specific occurrence triggering union member's responsibility to bring grievance, and thus arbitrator who treated appointment as continuing violation and heard untimely grievance exceeded scope of his authority), thus making the "continuing-violation" exception inapposite.